STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-448


CARLA ANN GINGLES

VERSUS

KINNERY DARDENNE


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 223,833-G
HONORABLE HARRY FRED RANDOW, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, James T. Genovese, and Chris J. Roy, Sr.[*],
Judges.

**REVERSED.**


Derrick G. Earles
Brian Caubarreaux and Associates
P. O. Box 129
Marksville, LA 71351
(318) 253-0900
Counsel for Plaintiff/Appellant:
Carla Ann Gingles

Donald James Armand, Jr.
Pettiette, Armand, Dunkelman, Woodley, Byrd & Cromwell, L.L.P.
P. O. Box 1786
Shreveport, LA 71166-1786
(318) 221-1800
Counsel for Defendant/Appellee:
Ace American Insurance Company

---

[*]Honorable Chris J. Roy, Sr., participated in this decision by appointment of the
Louisiana Supreme Court as Judge Pro Tempore.

**Ian Alexander MacDonald**
**Longman Russo**
**P. O. Drawer 3408**
**Lafayette, LA 70502-3408**
**(337) 262-9000**
**Counsel for Defendant Appellee:**
**Kinnery Dardenne**

**SAUNDERS, Judge.**

**FACTS AND PROCEDURAL HISTORY:**

This appeal arises out of a judgment of the Ninth Judicial District Court granting Ace American Insurance Company's motion for summary judgment in a personal injury case filed by Carla Ann Gingles (hereinafter "Gingles"). Gingles was involved in an automobile accident on February 21, 2006, and filed a Petition for Damages on March 20, 2006 against: Kinnery Dardenne (hereinafter "Dardenne"), Progressive Casualty Insurance (hereinafter "Progressive"), and Ace American Insurance Company (hereinafter "Ace American"). When the accident occurred, Gingles was operating a vehicle owned by her employer, Novartis Corporation (hereinafter "Novartis") and insured by Ace American.

Gingles filed a motion for summary judgment, asserting that Ace American provided Novartis uninsured/underinsured motorist coverage ("UM coverage") and that the UM rejection form signed by Novartis was invalid because it lacked the insurance company's name, as required by the Louisiana Commissioner of Insurance. Then, Ace American filed a cross-motion for summary judgement on the basis that its insured, Novartis, had validly waived uninsured motorist coverage on January 17, 2006.

Gingles appeals, presenting one central issue for review.

**ASSIGNMENT OF ERROR:**

Does a UM waiver that fails to state the name of the insurer, as prescribed by the Louisiana Commissioner of Insurance, constitute a valid waiver and entitle Ace American to a grant of summary judgment?

**SUMMARY JUDGMENT**

"A motion for summary judgment is a procedural device used when there is

no genuine issue of material fact. The summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2)." *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La.11/29/06), 950 So.2d 544, 546-547. "Appellate courts review summary judgments *de novo* under the same criteria that governed the trial court's consideration . . . ." *Spera v. Lyndon Prop. Ins. Co.*, 00-1373, pp. 3-4 (La.App. 3 Cir. 3/7/01), 788 So.2d 56, 58-59 *writ denied*, 01-874 (La. 6/1/01), 793 So.2d 193.

This case involves cross motions for summary judgment, requiring this court to determine "whether either party has established there are  no genuine issues of material fact and [that] it is entitled to judgment as a matter of law." *Duncan* 950 So.2d at 547. The determination of whether either Gingles or Ace American is entitled to summary judgment depends on whether Ace American has carried its burden of proof by producing a valid UM selection form, thus establishing its ability to satisfy its evidentiary burden of proof at trial. If Ace American carried that burden of proof, then it is entitled to summary judgment.

On the other hand, Gingles argued in trial court  that, due to the absence of factual support for one or more essential elements to Ace American's claim, action, or defense, Gingles was entitled to summary judgment.  Gingles asserted that Ace American failed to carry its burden of producing evidence sufficient to prove the validity of the UM rejection form.  We shall examine the record and determine whether Ace American presented evidence sufficient to show that Novartis validly rejected UM coverage.

**VALIDITY OF UM SELECTION FORM**

Gingles argues that the UM waiver signed by Novartis did not effect a valid waiver of UM coverage because it failed to include the name of the insurer as prescribed by the Louisiana Commissioner of Insurance in the Louisiana Insurance Rating Commission Bulletins 98-01 and 98-03. We agree.

Louisiana has a strong public policy in favor of UM coverage. *Roger v. Estate of Moulton*, 513 So.2d 1126 (La.1987). The legislature has expressed this policy by statute, and the courts of this state have echoed the legislature in numerous decisions.[**] UM insurance is designed to provide full recovery for victims of automobile accidents who suffer damages caused by a tortfeasor who is not adequately covered by liability insurance. *Duncan* 950 So.2d 544.

UM insurance coverage in Louisiana is governed by the provisions of La. R.S. 22:680. Under this statute, UM coverage, "is an implied amendment to any automobile liability policy, even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected." *Duncan* 950 So. 2d at 547 (citing *Daigle v. Authement, 96-1662,* p. 3 (La. 4/8/97), 691 So.2d 1213, 1214). The Louisiana Supreme Court has also stated that the UM statute is to be liberally construed, with exceptions to or rejections of the legally provided coverage being interpreted strictly. *See Duncan,* 950 So.2d 544 and *Roger*, 513 So.2d 1126 . The state's interest in this area is so strong that "[t]he expression of a desire not to have UM coverage, however clear, does not necessarily constitute a valid rejection if the expression does not meet the formal requirements of the law." *Duncan,* 950 So.2d at

---

[1] *Duncan,* 950 So.2d 544; *Gray v. American Nat. Prop. & Cas. Co.* 07-1670 (La.11/16/07), 967 So.2d 513; *Johnson v. Gov't Employees Ins. Co.*, 07-1391 (La.App. 3 Cir. 4/9/08), 916 So.2d 451; *Spera*, 788 So.2d 56, *writ denied*, 01-0874 (La.6/1/01), 793 So.2d 193; *Fescharek v. US Agencies Ins. Co.*, 07-843 (La.App. 5 Cir. 2/6/08), 979 So.2d 562; *Shirey v. Barton*, 05-1192 (La.App. 1 Cir. 6/9/06), 938 So.2d 774; *A.I.U. Ins. Co. v. Roberts,* 404 So.2d 948 (La.1981); *Breaux v. Government Employees Ins. Co.*, 369 So.2d 1335 (La.1979).

3

546.

Prior to 1997, insurance companies were allowed to design their own UM rejection forms, which led to confusion and extensive litigation. The legislature recognized the problem and amended the UM statute, giving the Louisiana Commissioner of Insurance the responsibility of designing a valid UM rejection form. Louisiana Revised Statutes 22:608(1)(a)(ii) (emphasis added) states, in pertinent part:

> A properly *completed* and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. . . An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer *on the form prescribed by the commissioner of insurance . . . .*

The Louisiana Supreme Court has stated that, "[i]n directing the commissioner of insurance to prescribe a form, the legislature gave the commissioner the authority to determine what the form would require." *Duncan* at 551. Thus, not only must the insurer use the form prescribed by the commissioner of insurance, the insurer must also make certain the form is properly completed. *Id.* In executing his duties, the Louisiana Commissioner of Insurance "promulgated the UM rejection form on April 28, 1998 in La. Bulletin LIRC 98-01."*** *Shirey v. Barton*, 05-1192, p. 3 (La.App. 1 Cir. 6/9/06), 938 So.2d 774, 776. This bulletin set forth the requirements for a UM selection form, providing that, "for identification purposes, the company name must be placed at the lower left-hand corner . . . ." *Cohn v. State Farm Mut. Auto. Ins. Co.*, 03-2820, p.4 (La.App. 1 Cir. 2/11/05), 895 So.2d 600,602 n.2, *write denied*, 05-1000

---

[2] The Louisiana Commissioner of Insurance re-promulgated the UM selection/rejection form, which was accompanied by La. Bulletin LIRC 01-05 as well as Clarification Notice of Bulletin No. 01-05 Amended, dated December 1, 2006. We note that the UM rejection in this case was signed on January 17, 2006 and that the accident occurred on February 21, 2006.

4

(La. 6/17/05), 904 So.2d 705(citing La. Bulletin LIRC 98-01).

It is clear that, by issuing the bulletin and the form together, the Louisiana Commissioner of Insurance intended that the documents be considered together. An insurance company can no more reject the form's instructions than it can reject the prescribed form in favor of its own creation. If the commissioner's form alone were sufficient to communicate its requirements, there would have been no need for the commissioner to issue La. Bulletin LIRC 98-01, nor would the commissioner have issued yet another bulletin, La. Bulletin LIRC 01-05, and its Clarification Notice when re-promulgating the UM rejection form for January 1, 2007.

Ace American asserts that, because there is no place on the Commissioner's form for the company name, the inclusion of the insurer's name is not required for purposes of validity. However, this assertion is contradicted by the fact that the Louisiana Insurance Commissioner re-promulgated the UM rejection form, effective January 1, 2007, which form also lacks a marked space for the company name. Notably, both the 1998 and 2007 issuances of the form were accompanied with instructions to include the name of the insurance company on the form. "Clarification Notice of Bulletin No. 01-05 Amended," (emphasis added) states: "[f]urthermore, as previously instructed in Bulletin LIRC 98-01 and Bulletin LIRC 98-03, the Form *must* contain the name of the company in the lower left-hand corner . . . ."

It is clear that the presence or absence of a marked space for the company name did not escape the Louisiana Insurance Commissioner's attention, nor did the commissioner intend to abrogate the company name requirement by not providing a marked space for it on the form.[****] Even where the Louisiana Commissioner of

---

[3] The lower left-hand corner of the UM rejection form is left blank, providing an unmarked space for the company name.

5

Insurance has provided marked spaces for certain required items, the provision of these spaces alone has not prevented invalid completion of those items. In *Gray v. American NationalProperty & Casualty Co.*, 07-1670(La. 2/26/08), 977 So.2d 839, the court held as invalid a UM selection form which had not been completed before signing. Then, in *Johnson v. Government Employees Insurance Co.*, 07-1391, p. 7 (La.App. 3 Cir. 4/9/08), 980 So.2d 870,876, *writ denied*, 08-1031 (La. 8/29/08), 989 So.2d 105, this court found that where "[a]ll other blanks for the selection of UM coverage were pre-filled and marked 'N/A'" by the insurance company, such form was an invalid waiver. These cases indicate, *a fortiori*, that further instruction, beyond the mere form itself, is required for valid completion.

As directed by the state legislature, the Louisiana Insurance Commissioner promulgates a statutorily required UM selection/rejection form, along with instructions on how to properly complete the form. Insurance companies are sophisticated actors in a sophisticated field. They are required by law to read the accompanying instructions and to follow them. If it is necessary to do more than fill in blanks to *complete* the form, this is their responsibility. This court can find no reasonable explanation for the failure of the appellee to follow the given instructions. We note that other insurance companies have read the instructions and identified themselves on the UM rejection form. In fact, in *Fescharek*, 979 So.2d 562, the court held that US Agencies Insurance Company properly complied with the Louisiana Commissioner of Insurance's bulletin by including its identifying acronym in the bottom left-hand corner of the UM selection/rejection form.

Other courts, including this one, have addressed the necessity of identifying the insurance company providing coverage. In *Cohn*, 895 So.2d 600,602, the "box

6

identifying the insurance company providing coverage was not checked." The first circuit ruled that:

> By not including a complete policy number, checking off the name of the insurance company, or indicating that she was signing in a representative capacity, the UM waiver was not "clear and unmistakable." Because the exceptions to coverage are to be interpreted strictly, we find that [the insured's] attempt to waive UM coverage was not valid, and the trial court erred in granting summary judgment.

*Id.* at 602-603. Furthermore, this court addressed the issue of the name requirement in *Spera,* 788 So.2d 56. In *Spera*, "the effective date, the name of the insurance company, and the policy number were left blank." *Id.* at 59. We ruled that the attempted UM waiver had not been properly completed and was therefore invalid.

Finally, this court is instructed by the Louisiana Supreme Court's decision in *Duncan,* 950 So.2d 544. In *Duncan*, the issue presented was whether or not a UM selection/rejection form was valid when it lacked the policy number. Our supreme court found that a form which omitted the policy number was invalid.[*****]

We find these two pieces of information, the policy number and the insurance company name, to be, in effect, two sides of the same coin. If the absence of one is sufficient to invalidate the waiver, then surely the absence of the other constitutes an equally fatal omission. Both the insurance company name and the policy number are used to identify who is insuring whom, in what manner, and to what extent. Arguably, the absence of the insurance company name would make identification even more difficult than the absence of a policy number. Such a result would be inconsistent with the requirement that any exclusion from coverage in an insurance policy must

---

[4] In *Carter v. State Farm Mutual Automobile Insurance Co.*, 07-1294 (La.10/5/97), 964 So.2d 375, the Louisiana Supreme Court ruled that omission of the policy number did not invalidate the UM waiver form when, "a policy number is not available . . .".

be clear and unmistakable. *Daigle* 96-1662 at p. 3, 691 So.2d at 1214.

In its analysis, our supreme court in *Duncan* listed six formalities of a valid UM waiver, which requirements are now recognized as "sacrosanct." *Johnson v. Government Employees Insurance*, 07-1391 (La.App. 3 Cir. 4/9/08) p.4, 980 So. 870,874. These tasks are:

> (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen (available in options 2 and 4), then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date.

*Duncan* 950 So.2d at 551.

Ace American argues that because inclusion of the company name is not one of the six formalities listed in *Duncan*, it is not required for a valid UM waiver. A reading of *Duncan*, however, clearly shows that the six requirements are not intended to be an exhaustive list of the duties imposed on the insurer by the Louisiana Commissioner of Insurance. Moreover, the Louisiana Supreme Court recently restated the fact that the "Duncan Six" are not to be considered an exhaustive list of the duties imposed on the insurer when it held that, "compliance with the form prescribed by the Insurance Commissioner involves more than the rote completion of the 'six tasks' identified in *Duncan*" *Gray* 977 So.2d at 849. Again, this court can discern no reasonable explanation for not following the clear and simple instructions provided by the Louisiana Commissioner of Insurance for the valid completion of a UM selection/rejection form. Accordingly, we find that the trial court incorrectly granted summary judgment in favor of Ace American.

8

**CONCLUSION:**

After construing La. R.S. 22:680 liberally and its exceptions strictly, we find that Ace American failed to produce a valid UM selection form and thus failed to carry its burden of producing factual support sufficient to establish that it would be able to satisfy its evidentiary burden of proof at trial. Therefore, UM coverage was not effectively waived in this instance, thereby making UM coverage available equal to the liability limits of the policy. Accordingly, the trial court judgment is reversed.

**REVERSED.**

9